JOHN SEBESTA ET AL., APPELLEES, V. SUPREME COURT OF
HONOR, APPELLANT.

FILED FEBRUARY 20, 1908. No. 15,412.

1. **Evidence** examined and *held* sufficient to sustain the verdict.

2. **Insurance:** ACTION ON BENEFIT CERTIFICATE: DEFENSES. In an
action to recover upon a benefit certificate issued by a fraternal
insurance association, whose constitution contains a clause ma-
king the certificate incontestable after two years, except for vio-
lation of the constitution or laws of the order, and wherein the
death of the assured member did not occur within two years of
the issuance of the certificate, in order to sustain a defense on
the ground that the assured committed suicide, it is necessary
to allege and prove that death by suicide is a violation of the
constitution or laws of the order in force at the date of the as-
sured member's death.

APPEAL from the district court for Cass county: PAUL
JESSEN, JUDGE. *Affirmed.*

*W. B. Risse* and *A. L. Tidd,* for appellant.

*Matthew Gering, contra.*

GOOD, C.

This action was brought against the Supreme Court of
Honor, a fraternal insurance association, by the bene-
ficiaries of a certificate of membership issued by said as-
sociation to Anton Sebesta. The defendant alleged that
Sebesta committed suicide by eating the heads of parlor
matches, and that under the constitution of the defendant
association it was not liable when the assured member
committed suicide. Plaintiffs had judgment for the
amount of the certificate, which was afterwards reversed
by this court. 77 Neb. 249. Upon a second trial of the
cause in the district court the beneficiaries again recovered
a judgment for the amount of the certificate, with interest,
and the defendant has appealed to this court.

Although there are numerous assignments of error, they

relate principally to the sufficiency of the evidence to sustain the verdict, and to the instructions given and refused by the trial court. The record discloses that Sebesta became a member of the defendant association and received his membership certificate in May, 1898, and that he came to his death on the 14th day of July, 1903. It discloses that he was of a cheerful disposition, and had no apparent cause or desire to take his own life. About a month previous to his death he had suffered an injury, from which he had apparently nearly recovered. He had been making his home with friends, whose home he left about a week before his death, when he went to a near-by neighbor. At this time he was ill, and complained of a headache and pains in his abdomen. After he left his home a box of parlor matches was found near the barn with the heads off. At the neighbor's, where he stayed for a day or two, in the room which he had occupied, was found a box of matches with the heads partly missing. This neighbor asked Sebesta about the matches, but he neither admitted nor denied eating them, but looked down and said: "I am just so well off now as on top of the ground." This neighbor advised him to see a doctor, which he did. It appears that he consulted three different physicians, and made every effort to get relief from his illness, and expressed a great desire to recover and live. The physician who last attended him testified that, in his opinion, Sebesta died of phosphorus poisoning. The evidence shows that Sebesta exhibited a number of symptoms of phosphorus poisoning, while, on the other hand, a number of symptoms that usually attend phosphorus poisoning were entirely absent. The first physician who treated Sebesta after the match episode diagnosed his case as the first stage of typhoid fever. There was no direct evidence that Sebesta ate any of the match heads. The record does not disclose that Sebesta knew that the heads of parlor matches contained phosphorus, or that they were poisonous. From a consideration of all the evidence in the case, we think that a jury might have been justified in finding

that Sebesta died of phosphorus poisoning, but we do not think the evidence is such as to compel such a finding. It certainly falls far short.of conclusively showing that, even if Sebesta did eat the match heads, he thereby intended to commit suicide, and the court did not err in refusing to direct a verdict upon that ground.

Section 2, art. X of the constitution of the Supreme Court of Honor, in force at the time Sebesta became a member of the association, is as follows: "This order will not pay the benefits of members who commit suicide, whether sane or insane, except it be committed in delirium resulting from illness, or while the member is under treatment for insanity, or has been judicially declared to be insane; but, in all cases not within said exceptions, 'the amount of money contributed to the benefit fund by such member, shall be returned, and shall be paid to the beneficiaries out of said fund in lieu of the benefit."

Section 13 of the constitution then in force is in the following language: "After two years certificates of membership shall be incontestable for any cause except fraud, violation of the constitution or laws of this order, or a failure to pay the assessment for the benefit and general funds as provided by the laws."

From a consideration of the section first quoted, it would appear that the beneficiaries would not be entitled to recover, if Sebesta committed suicide within two years of the date of his membership certificate, for it was stipulated that he was not in a delirium resulting from illness, that he was not under treatment for insanity, and that he had not been judicially declared insane at the time he was supposed to have eaten the match heads. His death occurred more than five years after he became a member, and, under section 13 above quoted, it is extremely doubtful whether or not the defense of death by suicide was eliminated. It is not necessary to decide that question, for a reason which we will now state.

It appears that this constitution had been superseded by a new constitution which became effective in the year

1900, and which, so far as appears from the record, was in force at the time of Sebesta's death. By the adoption of the new constitution, the old one was abrogated and annulled. The record discloses that section 13, containing the incontestable clause, was carried forward in the newly adopted constitution, but the record is silent as to whether or not section 2, art. X, above quoted, was contained in the new constitution. Upon this state of the record, the membership certificate would be incontestable after two years, save in those cases falling within the exceptions designated in the incontestable clause. There is no evidence in the record that any clause in the constitution in force at the time of Sebesta's death was violated, or that any of the laws of the order were violated, and it was stipulated that all assessments for the benefit and general funds had been paid as provided by the laws of the order. For the appellant to avail itself of any defense that might exist by reason of the exceptions in section 13 of the constitution, it would be necessary for it to allege and prove that Sebesta had violated some of the provisions of the constitution or some of the laws of the order. Appellant has assumed that, because the constitution in force at the time the certificate was issued contained the suicide clause, as above quoted, the defense of suicide was available to it under the exceptions contained in the incontestable clause. In this we cannot concur. When the old constitution was abrogated by the adoption of the new one, it was the same as if it had never existed, and we are not at liberty to presume, in the absence of any evidence, that the suicide clause was carried forward or re-enacted into the new constitution. It therefore follows that, upon the state of the record as it existed, suicide did not constitute a defense.

The instructions complained of relate to the alleged misdirection of the court in defining suicide, and in the refusal to instruct the jury with reference to the defense of suicide as requested by the appellant. We have examined these instructions, and think that they properly state the law. But in the view that we have heretofore expressed,

that suicide did not constitute a defense, as shown by the record, it is not necessary to further consider the instructions.

There is no reversible error in the record, and the judgment of the district court should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion the judgment of the district court is

AFFIRMED.